## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
## PANAMA CITY DIVISION

**JAMES MCPHERSON and**
**VICKI MCPHERSON,**

      **Plaintiffs,**

**v.**                        **CASE NO.: 5:20-cv-00318-TKW-MJF**

**LEXINGTON INSURANCE**
**COMPANY,**

      **Defendant.**
_____/

## PLAINTIFFS' AMENDED RESPONSE TO LEXINGTON INSURANCE COMPANY'S MOTION FOR FINAL SUMMARY JUDGMENT[1]

      COMES NOW The Plaintiffs, JAMES MCPHERSON and VICKI MCPHERSON, by and through their undersigned counsel, and pursuant to Rule 26 & 56, Federal Rules of Civil Procedure, and Local Rules 56.1, hereby respond to Defendant's Motion for Final Summary Judgment, and in support thereof state as follows:

### BACKGROUND AND SUMMARY OF ARGUMENT

      1.    This lawsuit arises from Plaintiffs' insurance claim with Defendant for damages to the Insured Property, located at 1815 Weakfish Way, Panama City Beach, FL 32408, resulting from Hurricane Michael.

---

[1] Amended to correctly reference exhibits as the notice of filing came in as various documents.

2.     Respectfully, this Court should deny the summary judgment in favor of Defendant on the following issues, for the following reasons:

      A. Plaintiffs do not need their expert witness evidence to establish that Hurricane Michael damaged their windows and doors.

      B. Plaintiffs can establish the damages that Hurricane Michael caused to their windows and doors.

      C. The subject policy is ambiguous as to whether Plaintiffs needed to formally request ACV coverage, but assuming Plaintiffs needed to, Defendant was put on notice that Plaintiffs made an ACV claim, and by failing to make payment on Plaintiffs' ACV claim, Defendant breached the insurance contract.

3.     Plaintiffs concede that Florida's Matching Statute is inapplicable in this case.

4.     Plaintiffs concede on the issue of Ordinance and Law, as they are not making a claim for Ordinance and Law.

**STATEMENT OF DISPUTED FACTS AND ARGUMENTS**

**A.     Plaintiffs do not need their expert witness evidence to establish that Hurricane Michael damaged their windows and doors.**

5.     Plaintiffs, in three separate occasions, served Rule 26(a)(2) expert disclosures on Defendant. *See Plaintiffs' Expert Witness Disclosures* [Doc. 65-1, 2, and 3].

6.     On February 25, 2022, this Court struck Plaintiffs' Second Amended Rule 26(a)(2) expert disclosures. [Doc. 54].

7.     Despite Plaintiffs not being able to use their experts' evidence that their windows and doors were damaged by Hurricane Michael, Plaintiffs have ample evidence to support their claim.

8.     First, Plaintiffs can prove that their windows and doors were damaged by Hurricane Michael through Defendant's Field Adjuster, Farris Jackson's, admission that during his inspection he found that the windows were damaged by Hurricane Michael.

9.     On November 5, 2018, Mr. Jackson prepared a Loss Report where he stated that the dwelling suffered interior water damages from wind driven rain under the windows and doors, and that several windows of the property showed their seals broken due to the wind force of Hurricane Michael. *See the highlighted portions of Farris Jackson's November 5, 2018, Loss Report* [Doc. 65-5].

10.     Second, Plaintiffs can prove that their windows and doors were damaged by Hurricane Michael through Defendant's Payment for Hurricane

Michael damaged windows and doors. Defendant's Corporate Representative,

Kathy Spinella specifically testified:

> Q:  All right. I can show you the windows and doors that you all
> agreed to pay for. Do you see this, ma'am? We don't want to go
> too fast. Bottom of Page 4, Exhibit No. 7, bottom of Page 4, it
> shows windows and doors. Go to the bottom of this -- go to the
> next page, please. Showing again windows and doors,
> $25,690.87. I'm glad we did this. The numbers are different.
>
> A:  Okay.
>
> Q:  Ma'am, so the Replacement Cost Value --
>
> A:  I see what it is.
>
> Q:  Okay. The Replacement Cost Value is $39,251.74. You all took
> $13,568.87 for depreciation, and paid $25,690.87 for the eight
> windows and doors that you guys acknowledge were damaged
> by the hurricane; is that true?
>
> A:  That is what it says.
>
> Q:  Did you pay that amount to my clients for eight windows and
> doors?
>
> A:  Well, again, that is why if you could go to the last-last page, I
> can see, based on what we actually wrote.
>
> Q:  Yes, ma'am. Thank you. I think that was it. Go up a little bit.
> There we go. All right. $496,444.17.
>
> A:  I don't see any indication that we did not allow that full amount
> for the window, so I would say, yes, $25,000.

*See Deposition of Kathy Spinella* [Doc. 65-6] at 133:14 – 134:16, and *the highlighted
portions of Young & Associates October 1, 2020, Repair Estimate* (referenced in the
excerpt above for Defendant's payment to Plaintiffs for Hurricane Michael damaged
windows and doors) [Doc. 65-7].

11.  Defendant's two admissions of Hurricane Michael damage to

Plaintiffs' windows and doors starkly contrast Defendant's Experts' determination

that Plaintiffs' "windows and doors at the McPherson property do not require

replacement due to any damage from Hurricane Michael." *See Scott Sanders*

*Affidavit with Report* [Doc. 63-4] at p.2, ⁋8.a. *See also Robert Beaird report* [Doc. 63-5]; *Andy Householder Report* [Doc. 63-6].

12.     In other words, Defendant and its own experts' opinions contradict each other and they create an issue of material fact in regard to whether Plaintiffs suffered damage to their windows and doors from Hurricane Michael.

13.     Third, Plaintiffs can prove that their windows and doors were damaged by Hurricane Michael through their own testimony.

14.     In their affidavits, Plaintiffs explain that before Hurricane Michael, they had no damages to their windows and doors and that they had no issues with water intrusion through their windows and doors. When they arrived at the subject property on October 11, 2018, just one day after Hurricane Michael, they found significant damage to their windows and doors, which led to water intrusion in their home. *See James McPherson & Vicki McPherson's Affidavits in Support of Plaintiffs' Response to Defendant's Motion for Final Summary Judgment* [Doc. 65-8 and 9].

15.     In addition, Mrs. McPherson testified in her deposition as follows:

Q:     And why do you believe the majority of these windows and doors are damaged from Hurricane Michael?

A:     Because my windows and doors did not look like they look today. My windows and doors, the paint was fresh and not chipped. the seams, or the joints weren't -- they're separating. There was no mold or mildew between the glass. There's moisture under them now that there weren't before. Had no issues with my windows and doors prior to Hurricane Michael.

*See Deposition of Plaintiff Vicki McPherson* [Doc. 63-1] at 66:22 – 67:05.

> Q:   So aside from your personal observation that lead you to believe that the majority of windows were damaged from Hurricane Michael, is there any other basis for that statement?
>
> A:   I'm not a window expert, but I know what my windows looked like before Hurricane Michael, and I know what they look like now. Not only the windows are damaged, but up under the windows are damaged. The paint's peeling off the walls. There's water stains in different places. My house did not look like that before Hurricane Michael.

[Doc. 63-1] at 67:12 – 67:23.

> Q:   For how many windows -- or were any windows -- following did Hurricane Michael break the glass of any windows at the property?
>
> A:   I know the window over the kitchen sink was broken. I don't recall that any of the other windows were actually broken.

[Doc. 63-1] at 82:19 – 82:24.

> Q:   Do you know if all exterior doors were damaged as a result of Hurricane Michael?
>
> A:   I know that all exterior doors have mildew and debris and things between the glasses. Some of them you have to be very, very careful because they have been, I guess, damaged to the point that they don't shut good. So, yes, I think the windows -- the doors have been damaged by Hurricane Michael, as well.

[Doc. 63-1] at 141:23 – 142:05.

16.   Fourth, Plaintiffs' testimonies that their windows and doors were damaged by Hurricane Michael are further supported by testimony from Zebulon Taft, of Mad Craftsman Group, LLC.

17.    In his deposition, Mr. Taft explains that prior to the Plaintiffs purchasing the subject property in 2016, he repaired three windows that were reported as damaged in the pre-sale property inspection report. Mr. Taft also explains that after the Plaintiffs purchased the subject property, he continued to do regular maintenance at the property, up until August of 2018, which was just two months before Hurricane Michael. Most importantly, Mr. Taft explains that from the moment the Plaintiffs purchased the subject property and up until August of 2018, the Plaintiffs never complained of window or door damages at the property, that Mr. Taft never saw window or door damages at the property, and that Mr. Taft did not need to perform any window or door repairs at the property.

18.    Mr. Taft testified in his deposition as follows:

Q:    Okay. Is this the repairs that was performed on the house prior to closing? I can show you your invoice if you want.
A:    Yes. I mean, I have a copy of it. But, yes, these were repairs prior to -- from my recollection, everything was repaired on the windows prior to the sale of the house.

*See Deposition of Zebulon Taft* [Doc. 66-1] at 10:13 – 10:19, and *Mad Craftsman Group, LLC.'s Invoice* (referenced in the excerpt above for window repairs prior to Plaintiffs purchasing the subject property) [Doc. 66-2].

Q:    I've got a few questions for you. You mentioned doing maintenance after the McPhersons bought the property. When did you start doing maintenance work for the McPhersons?
A:    The first invoice that I have that I can pull back up was February of 2017. And I did some -- let's see, wiring, install ice machine, did some coax wiring, drywall repairs, painted some cabinets, things that the homeowner wanted done.

Q:  I didn't want specifics just yet. I just wanted to try to get a timeline. You mentioned regular maintenance. After that first one in February of 2017, when did you stop doing regular maintenance for the McPhersons?

A:  It was right around the hurricane time. That got a little bit crazy for everyone. It was --let me see, my last invoice to the McPhersons was in August of '18. And it was October of '18 when Hurricane Michael hit.

*See Deposition of Zebulon Taft* [Doc. 66-1] at 21:05 – 21:23.

Q:  Now, sir, you said that after you had performed this work in 2016, that the McPhersons kept you on to do regular maintenance at the home?

A:  Yes sir.

Q:  Do you recall at any time prior to Hurricane Michael the McPhersons ever complaining about problems with leaky windows?

A:  Not to my knowledge at this point. It's been a while, but not to my knowledge, sir.

*See Deposition of Zebulon Taft* [Doc. 66-1] at 18:10 – 18:18.

19.    In sum, Plaintiffs respectfully argue that the foregoing evidence of Hurricane Michael damages to Plaintiffs' windows and doors should be sufficient to get Plaintiffs past Defendant's Motion for Summary Judgment, on this issue.

**B.**    **Plaintiffs can establish the damages that Hurricane Michael caused to their windows and doors.**

As described above, despite Plaintiffs not being able to use their experts' evidence that their windows and doors were damaged by Hurricane Michael, Plaintiffs have ample evidence of damages to support their claim.[2]

20.    Additionally, Plaintiffs procured a repair estimate for their Hurricane Michael damaged windows and doors from CMR Construction and Roofing, which directly contradicts Defendant's estimation of damages and creates an issue of material fact. *See CMR Construction and Roofing's Windows and Doors Repair Estimate* [Doc.66-3].

21.    Pursuant to Rule 901(b)(1), Federal Rules of Evidence, CMR Construction and Roofing's estimate was authenticated and supported during CMR Roofing and Construction's corporate representative/records custodian's deposition. Please see below:

> Q:    All right. Dan, as I'm going through this document, please review it, confirm for me that it is the one that you produced to us. And at the same time, as I'm going through it, please just let me know that you are familiar with these documents, okay?
> A:    Yes.
> Q:    All right. It's a large file. I'm going to be moving through it with a little bit of speed. If you need me to slow down for anything because something catches your attention, just let me know, okay?
> A:    Yes.

---

[2] *See,* Section "A" of "Statement of Disputed Fact and Argument" above.

Q:    I'm going to stop screen sharing. So, first, are you familiar with this entire file that you produced over to us?

A:    I am.

Q:    Okay. Have you reviewed all of these documents prior to this deposition?

A:    I have.

Q:    Okay. Is it your company's business practice to prepare these type of records and to maintain these type of records?

A:    It is.

        MR. MOODY: Objection to form.

        BY MR. GONZALEZ:

Q:    All right. Were these records prepared in the ordinary scope of the business of your company?

A:    They were.

Q:    Okay. Were they prepared by somebody with knowledge from within the company?

A:    Yes.

Q:    Okay. Were these documents stored after they were prepared by your company?

A:    They were.

Q:    Okay. And where were they retrieved from?

A:    Electronic --

        MR. MOODY: Form.

        THE WITNESS: -- electronic job file or system called AccuLynx, A-C-C-U-L-Y-N-X.

        BY MR. GONZALEZ:

Q:    And are these types of documents the ones that would be kept under your custody or control at CMR?

A:    Yes.

*See Deposition of Daniel Lewis* [Doc. 67-1] at 08:24 – 10:19, and *CMR Construction and Roofing's Windows and Doors Repair Estimate* (contained in CMR's entire file referenced and discussed in the excerpt above) [Doc. 69-1 (pages 177-209)].

22.    Plaintiffs also procured a repair estimate for their Hurricane Michael damaged windows and doors from LJB Restoration Services, LLC., which directly contradicts Defendant's estimation of damages and creates an issue of material fact.

*See LJB Restoration Services, LLC.'s Windows and Doors Repair Estimate* [Doc.71-1].

23.     Pursuant to Rule 901(b)(1), Federal Rules of Evidence, LJB Restoration Services, LLC.'s estimate was authenticated and supported during LJB Restoration Services, LLC.'s corporate representative/records custodian's deposition. Please see below:

Q:     You see the final estimate here, sir?

A:     I see ONP subtotal. I don't see – you didn't scroll down far enough. Yes, I see it now.

Q:     What's the final?

A:     $719,928.66

Q:     Does LJB stand by this number, sir? Or at least at the time you drafted this?

A:     Yes.

Q:     Do you have any reason to believe this number is not an accurate reflection of what the cost would be to replace the doors and windows in the McPherson home?

A:     Well, it includes more than that.

Q:     Okay. Like what?

A:     Well, I'm seeing stucco on the exterior, plaster repair. There is something on there roofing, 15,000; there's drywall.

Q:     When you demo windows and doors -- I think there was 115 or so in this?

A:     Yeah.

Q:     So you're going to have stucco and drywall work?

A:     Absolutely.

        MR. MOODY: Form.

        BY MR. RUDD:

Q:     In order to tear out, replace, reinstall, and touch-up drywall and stucco, would this number accurately reflect the number of the cost associated with doing that?

A:     Yes.

Q:     At least at the time this was drafted?

A:     Yes.

*See Deposition of James Rossi* [Doc. 63-9] at 28:24 – 30:05.

24.     Both companies, CMR Construction and Roofing and LJB Restoration Services, LLC., and their estimates were disclosed to Defendant through Initial Disclosures and through discovery responses. [Doc.13]

25.     Therefore, Plaintiffs can establish the damages that Hurricane Michael caused to their windows and doors.

**C.     The subject policy is ambiguous as to whether Plaintiffs needed to formally request ACV coverage, but assuming Plaintiffs needed to, Defendant was put on notice that Plaintiffs made an ACV claim, and by failing to make payment on Plaintiffs' ACV claim, Defendant breached the insurance contract.**

26.     As will be discussed further below, the subject policy is ambiguous as to whether Plaintiffs needed to formally request ACV coverage.

27.     Despite submitting RCV estimates throughout the life of this claim, Plaintiffs are making an ACV claim with Defendant for their windows and doors, just as the Plaintiffs have settled all other portions of this Hurricane Michael claim with Defendant. *See, St. Michaels Anglican Catholic Church of Panama City Florida Inc. v. Church Mut. Ins. Co.,* 5:20-CV-235-AW-MAF, 2021 WL 6882431, at \*5 (N.D. Fla. Nov. 24, 2021)("CMIC was 'arguably put on notice' that St.

Michael's was seeking ACV payment. And, like in *Buckley Towers*, St. Michael's presuit submission of RCV estimates is not dispositive.").

28.    Therefore, Defendant was on notice that Plaintiffs were making an ACV claim, and by failing to make payment on Plaintiffs' ACV claim, Defendant breached the insurance contract.

29.    In contrast to our case, in the cases Defendant cited to support its arguments, the plaintiffs were requesting RCV coverage prior to the insureds completing the repairs, which is why the courts ruled against them. *See Metal Prods. Co. v. Ohio Sec. Ins. Co.,* No. 21-11612, 2022 U.S. App. LEXIS 844 (11th Cir. Jan. 11, 2022); *CMR Constr. & Roofing, LLC v. Empire Indem. Ins. Co.,* 843 F. App'x 189 (11th Cir. 2021).

**WHEREFORE,** Plaintiffs, JAMES MCPHERSON & VICKI MCPHERSON, respectfully request that this Court deny Final Summary Judgment in favor of Defendant, on all issues, except matching and ordinance and law, and grant any further relief that this Court deems necessary and proper.

## MEMORANDUM OF LAW

## I.    STANDARD OF LAW

A court may grant a motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Further, the parties may support

their positions by citations to evidence in the record, including, among other things, depositions, documents, affidavits, or declarations. *See* Fed. R. Civ. P. 56(c). An issue of fact is genuine if "a reasonable trier of fact could return judgment for the non-moving party." *Miccosukee Tribe of Indians of Fla. v. United States*, 516 F.3d 1235, 1243 (11th Cir. 2008) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). In addition, a fact is material if it "might affect the outcome of the suit under the governing law." *Id.*

A court views the facts in the light most favorable to the nonmoving party, draws "all reasonable inferences in favor of the nonmovant and may not weigh evidence or make credibility determinations, which 'are jury functions, not those of a judge.' " *Lewis v. City of Union City, Ga.*, 934 F.3d 1169, 1179 (11th Cir. 2019) (quoting *Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1252 (11th Cir. 2013)); *Davis v. Williams*, 451 F.3d 759, 763 (11th Cir. 2006); *see also Crocker v. Beatty*, 886 F.3d 1132, 1134 (11th Cir. 2018) ("[W]e accept [the non-movant's] version of the facts as true and draw all reasonable inferences in the light most favorable to him as the non-movant."). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which a jury could reasonably find for the [non-moving party]." *Anderson*, 477 U.S. at 252, 106 S.Ct. 2505. "If more than one inference could be construed from the facts by a reasonable fact finder, and that inference introduces a genuine issue of material

fact, then the district court should not grant summary judgment." *Bannum, Inc. v. City of Fort Lauderdale*, 901 F.2d 989, 996 (11th Cir. 1990).

      The moving party shoulders the initial burden of demonstrating the absence of any genuine issue of material fact. *Shiver v. Chertoff*, 549 F.3d 1342, 1343 (11th Cir. 2008). If a movant satisfies this burden, "the nonmoving party 'must do more than simply show that there is some metaphysical doubt as to the material facts.' " *Ray v. Equifax Info. Servs., LLC*, 327 F. App'x 819, 825 (11th Cir. 2009) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct 1348, 89 L.Ed.2d 538 (1986)). Instead, the non-moving party "must make a sufficient showing on each essential element of the case for which he has the burden of proof." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The non-moving party must produce evidence, going beyond the pleadings, and by its own affidavits, or by depositions, answers to interrogatories, and admissions on file, designating specific facts to suggest that a reasonable jury could find in the non-moving party's favor. *Shiver*, 549 F.3d at 1343. Yet, even where a non-movant neglects to submit any alleged material facts in dispute, a court must still be satisfied that the evidence in the record supports the uncontroverted material facts proposed by the movant before granting summary judgment. *Reese v. Herbert*, 527 F.3d 1253, 1268-69, 1272 (11th Cir. 2008).

## II.   FIRST ARGUMENT

Plaintiffs do not need their expert witness evidence to establish that Hurricane Michael damaged their windows and doors.

Despite Plaintiffs not being able to use their experts' evidence that their windows and doors were damaged by Hurricane Michael, Plaintiffs have ample evidence to support their claim.

Defendant argues that *Porben*, supports the proposition that expert witnesses are needed to establish the extent of damages caused by a windstorm. *See, Porben v. Atain Specialty Ins. Co.*, 546 F. Supp. 3d 1325, 1330 (S.D. Fla. 2021). In *Porben*, the plaintiff's expert witnesses were stricken, and the plaintiff argued that it could prove causation of damages through just 1) a letter from defendant stating that during the claim investigation the defendant found wind damage from the storm, and 2) an estimation of windstorm damages to the property. *Id.* at *1331. The defendant argued that even if the letter was an admission of coverage, the plaintiff could not show that said damages exceeded the policy's wind deductible. *Id.* The court considered Plaintiffs two pieces of non-expert windstorm damage evidence but concluded that plaintiff had not proffered sufficient evidence to establish that a covered loss caused damage to his property and that such damage exceeded the Policy's deductible. *Id.* at *1332.

The instant case is distinguishable in that Plaintiffs have proffered 6 pieces of evidence of Hurricane Michael damage to Plaintiffs' windows and doors.[3] Given that this Court does not have to worry about the hurricane deductible being met in this case, this Court can consider Plaintiffs' 6 pieces of evidence of Hurricane Michael damage, and, respectfully, Plaintiffs believe this Court should conclude that a jury can find that Plaintiffs established that Hurricane Michael caused the damages to their windows and doors.

Defendant argues that *Mama Jo's, Inc.*, supports the proposition that expert witnesses are needed to establish the extent of damages caused by a windstorm. *See Mama Jo's, Inc. v. Sparta Ins. Co.*, No. 17-cv-23362-KMM, 2018 U.S. Dist. LEXIS 201852, at *22 (S.D. Fla. June 11, 2018). In reality, *Mama Jo's, Inc.*, does not support Defendant's argument. First, said case acknowledges that an expert witness is not required in all cases. Second, said case states that lay witnesses cannot answer causation questions, in the very limited context of whether construction dust and debris caused damages to the insured's property, none of which relate to the instant case.

Given that the issue of whether Hurricane Michael caused the damages to Plaintiffs' windows and doors is a question of state law, Florida case law supports Plaintiffs' argument that non-expert evidence can be used to establish causation. In

---

[3] *See,* Section "A" of "Statement of Disputed Fact and Argument" above.

*Frederick,* the Florida District Court of Appeal found that the insured met her burden of showing the existence of a triable issue, as to the cause of her loss, by rebutting her insurer's expert engineer's opinion with an inspection report, an affidavit from the insured, and its general contractor's deposition testimony. *Frederick v. Citizens Prop. Ins. Corp.,* 314 So. 3d 539, 540 (Fla. 3d DCA 2020) Just like in *Frederick,* in the instant case, Plaintiffs rebut Defendant's engineers' opinions with Defendant's own inspection report, affidavits from the insureds, Plaintiffs' general contractor's deposition testimony, along with Defendant's corporate representative's deposition testimony, Plaintiffs' deposition testimony, and two repair estimates. Respectfully, this Court should also conclude that a jury can find that Plaintiffs established that Hurricane Michael caused the damages to their windows and doors.

In addition to *Frederick,* in *Morales,* the same Florida District Court of Appeal found that for the purposes of a motion for summary judgment, the weight of the evidence was not as important as the question of whether a genuine issue of material fact existed. *Morales v. Citizens Prop. Ins. Corp.,* 47 Fla. L. Weekly D649 *3 (Fla. 3d DCA Mar. 16, 2022). In *Frederick,* the insured rebutted the insurer's engineer's opinion with the insured's licensed contractor's opinions. *Id.* at *1. The Court ultimately concluded that the insured presented sufficient evidence to introduce a genuine issue of material fact regarding the cause of damage to the property and that

the trial court improperly granted summary judgment in favor of the insurer. *Id.* at *3.

Similar to *Morales,* in the instant case, this Court should consider Plaintiffs' evidence of Hurricane Michael damages to its windows and doors and determine if the evidence creates a genuine issue of material fact. Given that the courts in *Frederick* and *Morales* found genuine issues of material fact with much less evidence, respectfully, this Court should also conclude that Plaintiffs have presented sufficient evidence to introduce a genuine issue of material fact regarding the cause of damage to their windows and doors.

Federal case law also supports Plaintiffs' argument that a jury can consider Plaintiffs' non-expert evidence of causation to find that Plaintiffs established that Hurricane Michael caused the damages to their windows and doors.

In *Greater Hall Temple Church of God,* The Eleventh Circuit of the United States Court of Appeals ruled that although the plaintiff presented no admissible expert testimony and although none of the plaintiffs lay witnesses observed Hurricane Matthew causing the damage to the property, plaintiff's witnesses provided enough circumstantial evidence for a jury to draw the conclusion that Hurricane Matthew did, in fact, cause the home's damages. *Greater Hall Temple Church of God v. S. Mut. Church Ins. Co.,* 820 Fed. Appx. 915, 922 (11th Cir. 2020). In *Greater Hall Temple Church of God,* the plaintiff presented testimony of the

church's pastor that when he returned to the church after the storm, he noticed damages that he had never seen before the storm. *Id.* at *922. The Plaintiff also presented testimony from its stricken experts that they observed the church's roof before and after the storm and that after the storm, they observed roof damages. *Id.* The Eleventh Circuit of the United States Court of Appeals concluded that the above evidence "'furnished facts from which a logical conclusion could be drawn' that Hurricane Matthew caused the damage to the roof". *Id.*

The facts in *Greater Hall Temple Church of God* were eerily similar to the facts of the instant case. In both cases, 1) defendant insured the plaintiff for "direct physical loss to covered property", 2) defendant denied damages from a hurricane to a specific part of the property and claimed the damages were caused by pre-existing issues, 3) the court struck plaintiffs' experts, and 4) defendant argued at summary judgment that because the plaintiff could not present expert evidence of causation of damages, plaintiff's claim would fail. Just like in *Greater Hall Temple Church of God,* The Plaintiffs in this case present circumstantial evidence from the Insureds and their general contractor. Plaintiffs acknowledge that the court applied Georgia law in *Greater Hall Temple Church of God but* given that the facts of the case are so similar, and given that the Plaintiffs in this case present more evidence than the plaintiffs in *Greater Hall Temple Church of God* did, respectfully, this Court should conclude that Plaintiffs have presented sufficient evidence to introduce a

genuine issue of material fact regarding the cause of damage to their windows and doors.

As discussed above, even if this Court were to conclude that Plaintiffs cannot prove that their windows and doors were damaged by Hurricane Michael without expert witness evidence, this Court should consider Defendant's opposing opinions on causation of damage and this Court should conclude that Defendant itself introduced a genuine issue of material fact regarding the cause of damage to Plaintiffs' windows and doors.[4]

## III.   SECOND ARGUMENT

Plaintiffs do not need their expert witnesses to establish the damages that Hurricane Michael caused to their windows and doors.

As described above, despite Plaintiffs not being able to use their experts, they can use the Insureds' testimony, their general contractor's testimony, Defendant's admission of Hurricane Michael damage to Plaintiffs' windows and doors, Defendant's payment for Hurricane Michael damage to Plaintiffs' windows and doors, and Plaintiffs two, authenticated and supported, repair estimates to establish the damage that Hurricane Michael caused to their windows and doors.[5]

---

[4] *See,* Section "A" of "Statement of Disputed Fact and Argument" above.
[5] *See,* Section "A" & "B" of "Statement of Disputed Fact and Argument" above.

CMR Construction and Roofing and LJB Restoration Services, LLC. both inspected the subject property, observed damages to Plaintiffs' windows and doors, and estimated the repairs needed for those windows and doors. Defendant cites to *Kakawi Yachting, Inc.,* which supports Plaintiffs proposition that despite not being able to provide expert witness testimony, CMR Construction and Roofing and LJB Restoration Services, LLC. should be able to provide their lay witness opinion on their personally observed matters, which in this case would be the damages to Plaintiffs' windows and doors. *Kakawi Yachting, Inc. v. Marlow Marine Sales, Inc.*, No. 8:13-cv-1408-T-TBM, 2014 U.S. Dist. LEXIS 200294, at *6 (M.D. Fla. Oct. 28, 2014) ("There is a marked difference between traditional lay opinion testimony, which relates to personally observed matters (e.g., 'it was about a mile away,' or 'the light was green') and the type of testimony offered here — an opinion regarding a matter that has yet to occur based on specialized knowledge of yachts and the cost for their repair.").

In addition, pursuant to Rule 701, Federal Rules of Evidence, CMR Construction and Roofing and LJB Restoration Services, LLC. should be allowed to testify as to the amounts listed in their repair estimates as the testimony would be 1) rationally based on the damages they perceived, 2) the testimony would be helpful in clarifying and quantifying the damages they observed, 3) the testimony would be helpful in clarifying the fact that the Plaintiffs suffered damaged to their windows

and doors (which is a fact in issue), and 4) their testimony would not be based on scientific technical or other specialized knowledge. *Arch Specialty Ins. Co. v. Bp Inv. Partners, LLC*, No. 6:18-cv-1149-Orl-78DCI, 2021 U.S. Dist. LEXIS 88207, at *12-13 (M.D. Fla. Feb. 2, 2021) ("Escoto may testify to what he observed during his inspection, but he may not offer an opinion based on his specialized knowledge as a trained water restoration professional that such damages were caused by Hurricane Irma.").

Respectfully, this Court should find that Plaintiffs are able to establish the damages that Hurricane Michael caused to their windows and doors, that there is a genuine issue of material fact as to whether Defendant breached the insurance contract by failing to make payment on Plaintiffs windows and doors claim, and this Court should deny Defendant's Motion for Final Summary Judgment, on this issue.

## IV.   THIRD ARGUMENT

The subject policy is ambiguous as to whether Plaintiffs needed to formally request ACV coverage, but assuming Plaintiffs needed to, Defendant was put on notice that Plaintiffs made an ACV claim, and by failing to make payment on Plaintiffs' ACV claim, Defendant breached the insurance contract.

## I.   The subject policy is ambiguous as to whether Plaintiffs needed to formally request ACV coverage.

First, the applicable policy is ambiguous as to whether Plaintiffs needed to formally request ACV coverage.

The relevant policy provisions are as follows:

**HOMEOWNERS 3 – SPECIAL FORM**
**(HO 00 03 10 00)**

\*\*\*

**SECTION I – CONDITIONS**

\*\*\*

**C.    Loss Settlement**

\*\*\*

**2.**    Buildings covered under Coverage A or B at replacement cost without deduction for depreciation, subject to the following:

d.    We will pay no more than the actual cash value of the damage until actual repair or replacement is complete. Once actual repair or replacement is complete, we will settle the loss as noted in 2.a and b. above.
However, if the cost to repair or replace is both:

(1)    Less than 5% of the amount of insurance in this policy on the building; and

(2)    Less than $2,500;

We will settle the loss as noted in 2.a and b. above whether or not actual repair or replacement is complete.

e.    You **may** disregard the replacement cost loss settlement provisions and make claim under this policy for loss to buildings on an actual cash value basis. You may then make any claim for any additional liability according to the provisions of this Condition C. Loss Settlement, provided you notify us of your intent to do so within 180 days after the date of loss.

[Doc. 63-2] at p.32 (emphasis added).

Last year, this Court addressed this very issue. *See, St. Michaels Anglican Catholic Church of Panama City Florida Inc. v. Church Mut. Ins. Co.,* 5:20-CV-235-AW-MAF, 2021 WL 6882431, (N.D. Fla. Nov. 24, 2021). This Court reviewed

a strikingly similar RCV and ACV policy provision as the RCV and ACV policy provision that is at issue in this suit. See below:

[i]f Replacement Cost is shown in the Declarations Page ... we will determine the value of Covered Property ... as follows:

> (1) At Replacement Cost (without deduction for depreciation) as of the time of loss or damage ....
> (2) You **may** make a claim ... on an [ACV] basis instead of on a Replacement Cost basis. In the event you elect to have loss or damage settled on an [ACV] basis:
>> (a) We will then determine the value of Covered Property on an [ACV] basis ...;
>> (b) You may still make a claim on a Replacement Cost basis if you notify us of your intent to do so within 180 days after the date of the loss or damage.

*St. Michaels Anglican Catholic Church of Panama City Florida Inc. v. Church Mut. Ins. Co.,* 5:20-CV-235-AW-MAF, 2021 WL 6882431, at *2 (N.D. Fla. Nov. 24, 2021)(emphasis added).

Despite not needing to decide on the issue definitively, this Court concluded that, considering the policy language, Defendant could not articulate what affirmatively electing ACV looked like, that the policy was ambiguous as to whether ACV or RCV coverage election was prioritized, and, finally, that the policy's "Duties in the Event of Loss" were silent on the need for an insured to formally request ACV coverage as opposed to an RCV claim. *Id.* at *2.

Similarly in this case, the subject policy does not articulate what affirmatively electing ACV coverage looks like, the subject policy does not clarify whether an ACV or RCV claim is prioritized, and the subject policy is silent on the need for Plaintiffs to formally request ACV coverage as opposed to an RCV claim.

Given that the relevant portions of the two policies discussed above are so similar, respectfully, this Court should, again, find that Plaintiffs did not need to formally request ACV coverage, that there is a genuine issue of material fact as to whether Defendant breached the insurance contract by failing to make payment on Plaintiffs windows and doors claim, and this Court should deny Defendant's Motion for Final Summary Judgment, on this issue.

The Southern District of Florida further addresses this issue of policy ambiguity, in regard to the requirement of a formal ACV coverage request from the Insured. *See Appel v. Liberty Am. Ins. Co.,* 08-20385-CIV, 2008 WL 11333591, (S.D. Fla. Nov. 25, 2008). In *Appel,* the court analyzed a nearly identical RCV and ACV policy provision as the RCV and ACV policy provision that is at issue in this suit and concluded as follows:

> Based on its interpretation of the above provisions, the Court does not agree that Plaintiffs must allege actual repair or replacement (or that the cost to repair is less than 5% of the amount of insurance or less than $1,000) in order to give rise to Defendants' liability for replacement cost. Although Section (b)(4) indicates that the Plaintiffs would not receive more than actual cash value if a claim is made under this section, Section (b)(5) suggests that a claim can be made on an actual cash value basis under Section (b)(4) or on a replacement cost basis under Sections (b)(1) or (b)(2). Section (b)(5) even states that an insured can make an actual cash value claim and then submit a replacement cost claim later on. In other words, although Plaintiffs have not alleged repair or replacement and do not allege that the cost to repair the damage is less than $1,000, they are not precluded by the actual cash value provision from pursuing a claim for replacement cost. No where does Section (b)(4) state that actual repair or replacement must be complete in order for an insured to submit a claim for replacement

cost. Furthermore, although Defendants cite cases for the proposition that "courts have almost uniformly held that an insurance company's liability for replacement cost does not arise until the repair or replacement has been completed", a closer reading of the cases reveals that <u>the courts based their decisions on the language of the policy at issue rather than some unanimous rule.</u>

<u>Appel v. Liberty Am. Ins. Co.</u>, 08-20385-CIV, 2008 WL 11333591, at *5 (S.D. Fla. Nov. 25, 2008)(emphasis added).

Given that the relevant portions of the two policies discussed above are so nearly identical, respectfully, this Court should find that Plaintiffs did not need to formally request ACV coverage, that there is a genuine issue of material fact as to whether Defendant breached the insurance contract by failing to make payment on Plaintiffs windows and doors claim, and this Court should deny Defendant's Motion for Final Summary Judgment, on this issue.

## II.   Assuming Plaintiffs needed to request ACV coverage, Defendant was put on notice that Plaintiffs made an ACV claim.

Second, assuming Plaintiffs needed to formally request an ACV claim, Defendant was put on notice that Plaintiffs made an ACV claim.

This Court, in *St. Michaels Anglican Catholic Church of Panama City Florida Inc.,* found that defendant was put on notice of plaintiff's ACV claim—despite plaintiff only submitting RCV estimates to defendant—because, 1) the defendant's payment letters stated that the policy provides RCV coverage, but initially makes payment based on ACV figures, and to recover RCV payment, the insured should

complete repairs or notify the insurer of insured's intent to complete repairs, 2) defendant's statements of loss contained depreciation amounts labeled "recoverable withholding upon completion.", and 3) that the language found in the payment letters and the statements of loss were similar to the language found in the policy relating to ACV claims, not RCV claims. *Id.* at *4-5. Most importantly, this Court concluded that based on the evidence above, a jury could infer that defendant was on notice that plaintiff was making an ACV claim.

Similarly, in this case, throughout the life of the claim, Plaintiffs have submitted RVC estimates to Defendant.

Similarly, in this case, Defendant's payment letters state that, initially, payments are made based on ACV figures, and to recover RCV payment, Plaintiffs should complete repairs and submit paid repair invoices or receipts showing that repairs were completed. *See highlighted portions of Defendant's March 3, 2020, and November 15, 2018, payment letters* [Doc.71-2 and 3].

In *St. Michaels Anglican Catholic Church of Panama City Florida Inc.,* insurer's statements of loss contained depreciation amounts labeled "recoverable withholding upon completion.". *Id.* at *4. In this case, Defendant's statements of loss contain depreciation amounts and the following statement "Any additional claim for replacement cost and recoverable depreciation to be filed in accordance with the terms and conditions of your policy.". *See highlighted portions of*

*Defendant's November 19, 2018, Statement of Loss* [Doc.71-4]. Plaintiffs acknowledge that in *St. Michaels Anglican Catholic Church of Panama City Florida Inc.,* the language of insurer's statements of loss were slightly different, but Plaintiffs argue that both statements of loss indicate that the insurers were on notice that the insureds were making an ACV claim, despite submitting RCV estimates.

In this case, Defendant's payment letters state that initially payments are made based on ACV figures, and to recover RCV payment, Plaintiffs should complete repairs and submit paid repair invoices or receipts showing that repairs were completed, and Defendant's statement of loss contain the following statement "Any additional claim for replacement cost and recoverable depreciation to be filed in accordance with the terms and conditions of your policy". Very similar language is found in the subject policy relating to ACV claims, not RCV claims. See underlined below:

**HOMEOWNERS 3 – SPECIAL FORM**
**(HO 00 03 10 00)**

**\*\*\***

**SECTION I – CONDITIONS**

**\*\*\***

    **C.**    **Loss Settlement**

**\*\*\***

    **2.**    Buildings covered under Coverage A or B at replacement cost without deduction for depreciation, subject to the following:

        d.    <u>We will pay no more than the actual cash value of the damage until actual repair or replacement is complete. Once actual repair or replacement is complete, we will settle the loss as noted in 2.a and b. above</u>.

      e.      You **may** disregard the replacement cost loss settlement provisions and make claim under this policy for loss to buildings on an actual cash value basis. <u>You may then make any claim for any additional liability according to the provisions of this Condition C. Loss Settlement,</u> provided you notify us of your intent to do so within 180 days after the date of loss.

[Doc. 63-2] at p.32 (emphasis added).

Given that the evidence in this case is so similar to the evidence in *St. Michaels Anglican Catholic Church of Panama City Florida Inc.,* respectfully, this Court should, again, conclude that a jury could infer that Defendant was on notice that Plaintiffs were making an ACV claim, that there is a genuine issue of material fact as to whether Defendant breached the insurance contract by failing to make payment on Plaintiffs windows and doors claim, and this Court should deny Defendant's Motion for Final Summary Judgment, on this issue.

**III.**    **In the alternative, if this Court were to conclude that Defendant was not put on notice that Plaintiffs made an ACV Claim, Plaintiffs RCV estimates should be sufficient for Plaintiffs to survive Defendant's Motion for Summary Judgment.**

The Southern District Court of Florida has recently addressed the issue of RCV estimates being sufficient to get past a motion for summary judgment. *See, Marquez v. Nat'l Fire & Marine Ins. Co.,* 551 F. Supp. 3d 1313, 1322 (S.D. Fla. 2021). In *Marquez,* the court concluded that—despite only submitting RCV

estimates—because the insured agreed with the depreciation values contained in the insurer's repair estimate, the insured had submitted sufficient evidence to establish her actual cash value damages with reasonable certainty at trial. *Id.* at *1324. "Plaintiff need only subtract Defendant's depreciation amounts from Mr. Brizuela's replacement cost estimate to derive the actual cash value here". *Id. "*Because Mr. Brizuela's estimate supports Plaintiff's theory that the actual cash value of the loss exceeds what Defendant paid, Defendant's Motion must be denied on this issue." *Id.* at *1325.

In our case, Defendant has made an ACV payment (deducting an average of 27% for depreciation) to Plaintiffs on 15 windows and 1 door of Plaintiffs' property. *See the "Windows & Doors" category of Young & Associates October 1, 2020, Repair Estimate* [Doc. 65-7]. Just like in *Marquez,* Plaintiffs, in this case, do not dispute Defendant's depreciation amounts for Plaintiffs' covered windows and doors. Therefore, to derive the actual cash value of Plaintiffs' repair estimates, Plaintiffs only need to subtract 27% for depreciation. Therefore, respectfully, this Court should conclude that Plaintiffs have submitted sufficient evidence to establish their actual cash value damages with reasonable certainty at trial, that there is a genuine issue of material fact as to whether Defendant breached the insurance contract by failing to make payment on Plaintiffs windows and doors claim, and this Court should deny Defendant's Motion for Final Summary Judgment, on this issue.

The Middle District Court of Florida has also recently addressed the issue of RCV estimates being sufficient to get past a motion for summary judgment. *See SFR SERVICES LLC, a/a/o John Braun & Barbara Braun, Plaintiff, v. GEOVERA SPECIALITY INSURANCE COMPANY, Defendant.,* 2:19-CV-466-JLB-MRM, 2021 WL 1909669, at *1 (M.D. Fla. May 12, 2021). In *SFR Services LLC,* the plaintiff only submitted an RCV estimate to the insurer and the court concluded that "A plaintiff generally does not need to prove contractual damages with mathematical precision to survive summary judgment. It is enough for the plaintiff to establish that damages exist and can be proven with reasonable certainty." *Id.* at *5. Just like in *Marquez,* the court in *SFR Services LLC* found that "deriving actual cash value from replacement cost is fairly simple; all you have to do is subtract depreciation. Thus, assuming the underlying loss is covered, it would clearly be possible for SFR to establish damages at trial with reasonable certainty.". *Id.*

In this case, despite only submitting RCV estimates to Defendant, Plaintiffs have established that damages exist and said damages can be proven with reasonable certainty, for all the reasons discussed in this response. Therefore, respectfully, this Court should conclude that Plaintiffs have submitted sufficient evidence to establish their actual cash value damages with reasonable certainty at trial, that there is a genuine issue of material fact as to whether Defendant breached the insurance

contract by failing to make payment on Plaintiffs windows and doors claim, and this Court should deny Defendant's Motion for Final Summary Judgment, on this issue.

**WHEREFORE,** Plaintiffs, JAMES MCPHERSON & VICKI MCPHERSON, respectfully request that this Court deny Final Summary Judgment in favor of Defendant, on all issues, except matching and ordinance and law, and grant any further relief that this Court deems necessary and proper.

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 56.1(B)

Pursuant to Local Rule 56.1(B), the undersigned certify that this response contains 7,835 words.

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(K)

Pursuant to Local Rule 7.1(K), Plaintiffs and the undersigned request oral argument for this response and estimate that 1.2 hours should be enough to resolve all the issues raised in this response.

<u>**CERTIFICATE OF SERVICE FOR PLAINTIFFS'**</u>
<u>**RESPONSE TO LEXINGTON INSURANCE COMPANY'S**</u>
<u>**MOTION FOR FINAL SUMMARY JUDGMENT**</u>

**I HEREBY CERTIFY** that on this 20th day of May 2022, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system which sent notification of such filing to the parties who are registered participants with the system: Thomas J Moody, Esq., Clausen Miller P.C, 4830 West Kennedy Blvd, Suite 600, Tampa, Florida 33609. (tmoody@clausen.com; hrice@clausen.com; amccarthy@clausen.com)

RUDD & DIAMOND, P.A.
*Attorneys for Plaintiffs*
4000 Hollywood Blvd.
Presidential Circle, Suite 120-N
Hollywood, FL 33021
Tel. (954) 961-5059
Fax. (954) 961-8953
service@rudddiamond.com

By: __/s/_ *Michael P. Rudd*
Michael P. Rudd
FL Bar No.: 782416

99.14108/MPR/KG

34